# EXHIBIT "A"

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUPERIOR COURT
C.A. No. _____

| | |
|---|---|
| THOMAS ROBERTS,<br>     Plaintiff<br><br>v.<br><br>ABU TAREK,<br>DEUTSCHE BANK NATIONAL<br>  TRUST COMPANY,<br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      **VERIFIED COMPLAINT** |

### Parties

    1.    The Plaintiff, Thomas Roberts ("Roberts") is a natural person who resides at 220 Summit Blvd, Apt. 221, Broomfield, CO.

    2.    The Defendant, Abu Tarek ("Tarek"), is a natural person with a last known address at 1125 Commonwealth Avenue, Allston, MA.

    3.    The Defendant, Deutsche Bank National Trust Company ("Deutsche Bank") is a federal savings bank doing business in Massachusetts.

### Jurisdiction and Venue

    4.    Jurisdiction is conferred upon this Court, pursuant to M.G.L. c. 223A, §§2 and 3.  Venue is properly laid in Suffolk County pursuant to M.G.L. c. 223, §1, *et seq.*

### Facts

    5.    On or about September 29, 2003, Tarek, owned a condominium unit at 10 Jamaicaway, Unit 11, Jamaica Plain, MA (the "Condominium Unit").  At that time, Tarek granted a mortgage on the Condominium Unit to Argent Mortgage Company ("Tarek's Mortgagee") in the amount of $178,125.00 (hereinafter, the "Mortgage").  (See a true and accurate coy of the Mortgage at **Exhibit A**).

    6.    In or around early February 2004, Roberts sought to purchase a home that was situated near his place of employment.  On or about February 11, 2004, Roberts executed an Offer to Purchase (the "Offer to Purchase") the Condominium Unit for a

1

total purchase price of $243,000, the approximate market value of the property at the time, and Tarek accepted the Offer to Purchase. (See a true and accurate copy of the Offer to Purchase at **Exhibit B**).

7.      At all relevant times, Philip Gordon, Louis Michael Ross and Ara J. Balikian, all then of Gordon & Balikian, LLP (now known as Gordon Law Group, LLP) (together, "Tarek's Counsel"), served as counsel to Tarek with regard to the conveyance of the Condominium Unit from Tarek to Roberts. Roberts was not represented by counsel.

8.      At the time, unbeknownst to Roberts, the Condominium Unit was encumbered by the Mortgage. Nothing in the Offer to Purchase or Tarek's acceptance thereof demonstrated that Roberts was offering to pay not only $243,000 for the Condominium Unit, but also to assume and/or to be responsible for, the Mortgage.

9.      On February 13, 2004, Roberts and a Prudential Unlimited Realty salesperson named Jean-Paul LaPierre, who was Tarek's real estate agent ("Tarek's Realtor"), executed a document acknowledging that Roberts had elected not to use an attorney with regard to reviewing binding legal documents. (See a true and accurate copy of the document at **Exhibit C**). The document further provided that "[t]he buyer agrees to hold the real estate salesperson and their firm harmless from any and all damages that could have been avoided if the buyer used professional representation in the negotiation of the Purchase and Sale Agreement." Despite this language, as a general rule, a party may not contract away a fraud claim.

10.     On or about February 18, 2004, Roberts and Tarek executed a Purchase and Sale Agreement ("P&S Agreement") pertaining to Roberts' purchase of the Condominium Unit for a total purchase price of $243,000. (See a true and accurate copy of the P&S Agreement at **Exhibit D**). Paragraph 4 of the P&S Agreement provided that Tarek was to convey the Condominium Unit to Roberts "free from encumbrances," with certain exceptions not relevant here. Paragraph 14 provided that Tarek may, at the time of the delivery of the deed, use the proceeds of the sale to clear the title of encumbrances, such as a mortgage.

11.     The P&S Agreement also contained several Riders drafted by Tarek's Counsel. Paragraph 34 provided that Roberts elected not to perform an inspection, and that he was buying the Condominium Unit "as is." Paragraph 35 provided that Roberts was purchasing the rights, title and interests that Tarek had in the Condominium Unit. Paragraphs 34 and 35 did not, in any way, negate the representation in Paragraph 4 that Tarek would convey the Condominium Unit to Roberts free from all encumbrances. Nothing in the P&S Agreement disclosed the existence of any mortgage on the Condominium Unit, and, at no time before the closing on the Condominium Unit did Tarek, LaPierre, Prudential Unlimited Realty, or Tarek's Counsel reveal the existence of any mortgage on the Condominium Unit.

12. In advance of the closing, Tarek's Realtor told Roberts that a title search had been performed on the Condominium Unit. Based upon Tarek's Realtor's representation, Roberts reasonably believed that there was no mortgage on the Condominium Unit, or, to the extent that a mortgage did exist, that the mortgage would be paid off at the closing.

13. On February 20, 2004, two days after the signing of the P&S Agreement, Roberts attended the real estate closing pertaining to his purchase of the Condominium Unit. At the closing, Tarek's Counsel presented Roberts with a letter dated February 20, 2004. (See a true and accurate copy of the letter at **Exhibit E**). The letter does not refer to the P&S Agreement, and it is signed by Balikian (and not by Tarek); as a result, the letter is not a supplement to, nor may it be incorporated into, the P&S Agreement. The letter confirmed that Tarek's Counsel represented Tarek and not Roberts. The letter provided that Tarek, his agents and Tarek's Counsel had made no representations regarding the title or any fees relating to the Condominium Unit, and that Roberts was not relying upon any such representations. The letter provided, "[y]ou agree that you are purchasing the Property in its 'AS IS' condition without, among other things, an inspection of the Property or a prior survey of or review of the title to the Property." The letter also included language to suggest that Roberts was releasing Tarek and Tarek's Counsel from any claims relating to the transaction and that Roberts agreed to indemnify Tarek and Tarek's Counsel against "any and all loss, costs or damages, including but not limited to reasonable attorneys [sic] fees, arising from this transaction."

14. At no time did Tarek's Counsel afford Roberts an opportunity to consult with counsel before signing the February 20, 2004 letter (since the letter was first presented to Roberts at the closing), and at no time did Tarek's Counsel recommend that Roberts seek counsel before signing the document. Roberts, without the benefit of counsel, executed the letter during the course of the closing.

15. At or around the time of the closing, Tarek executed a Quitclaim Deed (the "Quitclaim Deed") conveying the Condominium Unit to Roberts, and Tarek's Counsel notarized Tarek's signature. (See a true and accurate copy of the Quitclaim Deed at **Exhibit F**). In the Quitclaim Deed, the "full consideration" was recited as $243,000, not approximately $421,000. Having already paid an initial deposit of $11,000, Roberts paid the balance of approximately $232,000 in cash at the closing. Nothing in the Quitclaim Deed identifies the Mortgage, or lists the bank involved. Nothing in the Quitclaim Deed states that Roberts would assume any mortgage on the Condominium Unit as a part of the conveyance.

16. At no time did Roberts execute any documents for Tarek's Mortgagee, or for any other entity or individual, in which he agreed to assume responsibility for the Mortgage.

17. Moreover, Tarek conveyed the property to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek covenanted that at the time of delivery of the deed, the Condominium Unit was free from all encumbrances made by Tarek and Tarek

warranted and agreed to defend the Condominium Unit against lawful claims and demands claiming by, through or under Tarek. In other words, by conveying the Condominium Unit pursuant to a Quitclaim Deed, Tarek warranted to Roberts that the Condominium Unit was free and clear. That was not the case.

18.     At no time following the closing did Tarek or Tarek's Counsel take any steps to discharge and/or to pay off the Mortgage. As a result, Tarek received not only the $243,000 in cash provided by Roberts, he also wrongfully walked away from an obligation to pay a Mortgage in the amount of approximately $178,000.

19.     The U.S. Department of Housing and Urban Development Settlement Statement (the "HUD-1") reveals that Tarek's Counsel served as the settlement agent with regard to the conveyance of the Property. (See a true and accurate coy of the HUD-1 at **Exhibit G**, which copy is not executed by Tarek's Counsel). The settlement agent is charged with the responsibility of making the necessary disbursements from the proceeds of the closing. In that role, the settlement agent routinely inquires about whether there is a mortgage payoff so as to be prepared to make any necessary payments. In Lines 203 and 503 of the HUD-1, the settlement agent identifies any existing loans that the property was taken "subject to." Here, those spaces are left blank on the HUD-1, thus demonstrating (1) that Roberts was not assuming any mortgage and (2), erroneously, that there was no outstanding mortgage at the time of the closing. Nothing on the HUD-1 gave Roberts any notice whatsoever that there was a mortgage remaining on the property.

20.     After purchasing the Condominium Unit, Roberts paid thousands of dollars in condominium fees, and he invested tens of thousands of dollars in renovations to the Condominium Unit over the next several years.

21.     On September 24, 2007, more than three years after Roberts purchased the Condominium Unit, Tarek's Mortgagee assigned the Mortgage to Deutsche Bank. (See a true and accurate copy of Assignment at **Exhibit H**).

22.     Shortly thereafter, unbeknownst to Roberts, Deutsche Bank initiated foreclosure proceedings pertaining to the Condominium Unit. On or about March 11, 2008, unbeknownst to Roberts, the Land Court (Sheier, J.) entered a judgment in a Complaint to Foreclose Mortgage (Docket No. 07 MISC 361107) permitting Deutsche Bank to enter and to sell the Condominium Unit in accordance with the powers set forth in the Mortgage. (See a true and accurate copy of the Land Court judgment **Exhibit I**).

23.     On or about March 13, 2008, unbeknownst to Roberts, Deutsche Bank conducted a foreclosure sale on the Condominium Unit (the "Foreclosure Sale"). In a Certificate of Entry dated March 13, 2008, unbeknownst to Roberts, Deutsche Bank gave notice that it had made entry on the Condominium Unit for the purposes of foreclosing the Mortgage. (See true and accurate copy of Certificate of Entry at **Exhibit J**. In the Certificate of Entry, Deutsche Bank expressly mentions Tarek, but nowhere in the document does Deutsche Bank refer to Roberts, further demonstrating that the Mortgage remained Tarek's obligation.

24.     On May 13, 2008, unbeknownst to Roberts, a Foreclosure Deed was recorded in the Suffolk County Registry of Deeds (Book 43527, Page 1) in which Deutsche Bank claimed to have acquired the Condominium Unit under the terms of the Mortgage for the sum of $199,393.27. (See a true and accurate copy of the Foreclosure Deed at **Exhibit K**). At no time has Roberts received any funds representing any surplus from the Foreclosure Sale.

25.     Roberts had rented the Condominium Unit to two lessees, beginning in or about August or September 2006. In or about May 2008, Roberts received a telephone call from one of his tenants, Vignoble Sylvestre, where Sylvestre informed Roberts that Sylvestre had received a certified letter from a bank stating that the bank now owned the Condominium Unit and ordering the lessees to vacate the Condominium Unit. At the time, Roberts had no knowledge whatsoever of the existence of any mortgage on the property. Roberts performed some internet research and located an address in Jamaica Plain for 10 Jamaica Plain Court. Roberts told Sylvestre, in words or substance, not to worry about the letter, because the letter must relate to the 10 Jamaica Plain Court property, and not to the Condominium Unit. That communication from Sylvestre represented the first notice that Roberts had, from any source, that anyone claimed, rightfully or wrongfully, that there was a mortgage of any kind on the Condominium Unit.

26.     Roberts has since communicated with Deutsche Bank, through counsel, and Deutsche Bank has acknowledged that it failed to provide Roberts with proper notice regarding the Foreclosure Sale. Deutsche Bank, through counsel, has stated that it will be re-doing the Foreclosure Sale. (See a true and accurate copy of emails between counsel for Roberts and Deutsche Bank at **Exhibit L**).

## Count I
## Breach of Contract Against Tarek

27.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 26 above, as if restated in their entirety here.

28.     The P&S Agreement was a binding contract, and pursuant to it, Tarek was obligated to convey the Condominium Unit free and clear of all encumbrances.

29.     Roberts fully performed under the P&S Agreement.

30.     Tarek breached the P&S Agreement by failing to convey the Condominium Unit free and clear of all encumbrances and by breaching the covenant of good faith and fair dealing.

31.     As a result of Tarek's breach of the P&S Agreement, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count II
## Fraud Against Tarek

32.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 31 above, as if restated in their entirety here.

33.     Tarek and his agents intentionally made material misrepresentations regarding the Condominium Unit and the Mortgage intending that Roberts rely upon those material misrepresentations.  Tarek and his agents intentionally misrepresented that the Condominium Unit was unencumbered or that if it was encumbered that it would be conveyed to Roberts free and clear of all encumbrances.

34.     Roberts reasonably relied to his detriment upon the material misrepresentations made by Tarek and his agents regarding the Condominium Unit and the Mortgage.

35.     As a result of Tarek's fraud, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count III
## Violation of Mass. Gen. Laws Ch. 183, Sections 11 and 17 Against Tarek

36.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 35 above, as if restated in their entirety here.

37.     Tarek conveyed the Condominium Unit to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek covenanted that at the time of delivery of the deed, the Condominium Unit was free from all encumbrances made by Tarek.

38.     Tarek conveyed the property to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek warranted and agreed to defend the Condominium Unit against lawful claims and demands claiming by, through or under Tarek.

39.     Tarek conveyed the property to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek warranted to Roberts that the Condominium Unit was free and clear.

40.     Roberts reasonably relied upon the warranties made to him by Tarek in the Quitclaim Deed.

41.     The Condominium Unit was not free and clear but rather was encumbered by the Mortgage.  Thus, Tarek breached the warranties provided in the Quitclaim Deed, and Roberts has been damaged as a result.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count IV
### Injunction Against Deutsche Bank

42.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 41 above, as if restated in their entirety here.

43.     Roberts has a reasonable likelihood of success on the merits of his claims against Tarek.

44.     If Deutsche Bank proceeds with a new foreclosure sale on the Condominium Unit, Roberts will be irreparably harmed since he will lose the Condominium Unit.

45.     If Deutsche Bank is enjoined from proceeding with a new foreclosure sale pending the outcome of this litigation, Deutsche Bank will suffer no irreparable harm since it will be able to foreclose on the Condominium Unit at a later date.

46.     Upon information and belief, there is a sufficient equity cushion to protect Deutsche Bank.

**Wherefore,** Roberts respectfully requests that Deutsche Bank be enjoined from proceeding with a new foreclosure sale on the Condominium Unit until further order of this Court.

**Verification**

I, Thomas Roberts, hereby attest and state under oath that the statements contained in this *Verified Complaint* are true and accurate to the best of my knowledge.  To the extent that any statements are made upon information and belief, I reasonably believe them to be true.

Signed under the penalties of perjury this 6th day of October, 2009.

_____
Thomas Roberts

**Jury Demand**

Plaintiff, Thomas Roberts, respectfully requests a jury trial on all issues so triable.

Respectfully submitted,
THOMAS ROBERTS
By his attorneys,

_____
David P. Russman (BBO 567796)
The Russman Law Firm, P.C.
33 Bellevue Street, Suite 1
Boston, MA  02125
617.282.5300

Dated: October 20, 2009

# EXHIBIT "B"

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                    SUPERIOR COURT
                                               C.A. No. 2009-04562-C

|  |  |
|---|---|
| THOMAS ROBERTS )<br>    Plaintiff )<br> )<br> )<br>v. )<br> )<br> )<br>ABU TAREK, )<br>PHILIP GORDON, ESQ. )<br>ARA BALIKIAN, ESQ. )<br>    Defendants )<br> ) | **AMENDED COMPLAINT** |

### Parties

1.      The Plaintiff, Thomas Roberts ("Roberts") is a natural person who resides at 220 Summit Blvd, Apt. 221, Broomfield, CO.

2.      The Defendant, Abu Tarek ("Tarek"), is a natural person with a last known address at 402 Rindge Avenue, Cambridge, MA.

3.      The Defendant, Philip Gordon, Esq. ("Gordon") is an attorney licensed to practice in Massachusetts with a principal place of business at the Gordon Law Group, LLP, 585 Boylston Street, Boston, MA.

4.      The Defendant, Ara Balikian, Esq. ("Balikian") is an attorney licensed to practice in Massachusetts with a principal place of business at Balikian Law, 922 Waltham Street, Suite 209, Lexington, MA.

### Jurisdiction and Venue

5.      Jurisdiction is conferred upon this Court, pursuant to M.G.L. c. 223A, §§2 and 3.  Venue is properly laid in Suffolk County pursuant to M.G.L. c. 223, §1, *et seq.*

### Facts

6.      On or about September 29, 2003, Tarek, owned a condominium unit at 10 Jamaicaway, Unit 11, Jamaica Plain, MA (the "Condominium Unit").  At that time, Tarek granted a mortgage on the Condominium Unit to Argent Mortgage Company ("Tarek's

1

Mortgagee") in the amount of $178,125.00 (hereinafter, the "Mortgage"). (See a true and accurate coy of the Mortgage at **Exhibit A**).

7.    In or around early February 2004, Roberts sought to purchase a home that was situated near his place of employment. On or about February 11, 2004, Roberts executed an Offer to Purchase (the "Offer to Purchase") the Condominium Unit for a total purchase price of $243,000, the approximate market value of the property at the time, and Tarek accepted the Offer to Purchase. (See a true and accurate copy of the Offer to Purchase at **Exhibit B**).

8.    Upon information and belief, at all relevant times, Gordon and Balikian, then of Gordon & Balikian, LLP, served as counsel to Tarek with regard to the conveyance of the Condominium Unit from Tarek to Roberts. Roberts was not represented by counsel.

9.    At the time, unbeknownst to Roberts, the Condominium Unit was encumbered by the Mortgage. Nothing in the Offer to Purchase or Tarek's acceptance thereof demonstrated that Roberts was offering to pay not only $243,000 for the Condominium Unit, but also to assume and/or to be responsible for, the Mortgage.

10.    On February 13, 2004, Roberts and a Prudential Unlimited Realty salesperson named Jean-Paul LaPierre, who was Tarek's real estate agent ("Tarek's Realtor"), executed a document acknowledging that Roberts had elected not to use an attorney with regard to reviewing binding legal documents. (See a true and accurate copy of the document at **Exhibit C**). The document further provided that "[t]he buyer agrees to hold the real estate salesperson and their firm harmless from any and all damages that could have been avoided if the buyer used professional representation in the negotiation of the Purchase and Sale Agreement." Despite this language, as a general rule, a party may not contract away a fraud claim.

11.    On or about February 18, 2004, Roberts and Tarek executed a Purchase and Sale Agreement ("P&S Agreement") pertaining to Roberts' purchase of the Condominium Unit for a total purchase price of $243,000. (See a true and accurate copy of the P&S Agreement at **Exhibit D**). Paragraph 4 of the P&S Agreement provided that Tarek was to convey the Condominium Unit to Roberts "free from encumbrances," with certain exceptions not relevant here. Paragraph 14 provided that Tarek may, at the time of the delivery of the deed, use the proceeds of the sale to clear the title of encumbrances, such as a mortgage.

12.    The P&S Agreement also contained several Riders drafted by Gordon and/or Balikian. Paragraph 34 provided that Roberts elected not to perform an inspection, and that he was buying the Condominium Unit "as is." Paragraph 35 provided that Roberts was purchasing the rights, title and interests that Tarek had in the Condominium Unit. Paragraphs 34 and 35 did not, in any way, negate the representation in Paragraph 4 that Tarek would convey the Condominium Unit to Roberts free from all encumbrances. Nothing in the P&S Agreement disclosed the existence of any mortgage

2

on the Condominium Unit, and, at no time before the closing on the Condominium Unit did Tarek, Tarek's Realtor, Gordon or Balikian reveal the existence of any mortgage on the Condominium Unit.

13.     In advance of the closing, Tarek's Realtor told Roberts that a title search had been performed on the Condominium Unit. Based upon Tarek's Realtor's representation, Roberts reasonably believed that there was no mortgage on the Condominium Unit, or, to the extent that a mortgage did exist, that the mortgage would be paid off at the closing.

14.     On February 20, 2004, two days after the signing of the P&S Agreement, Roberts attended the real estate closing pertaining to his purchase of the Condominium Unit. At the closing, Gordon and/or Balikian presented Roberts with a letter dated February 20, 2004. (See a true and accurate copy of the letter at **Exhibit E**). The letter does not refer to the P&S Agreement, and it is signed by Balikian (and not by Tarek); as a result, the letter is not a supplement to, nor may it be incorporated into, the P&S Agreement. The letter confirmed that Gordon and Balikian represented Tarek and not Roberts. The letter provided that Tarek, his agents and Gordon and Balikian had made no representations regarding the title or any fees relating to the Condominium Unit, and that Roberts was not relying upon any such representations. The letter provided, "[y]ou agree that you are purchasing the Property in its 'AS IS' condition without, among other things, an inspection of the Property or a prior survey of or review of the title to the Property." The letter also included language to suggest that Roberts was releasing Tarek and Gordon and Balikian from any claims relating to the transaction and that Roberts agreed to indemnify Tarek and Gordon and Balikian against "any and all loss, costs or damages, including but not limited to reasonable attorneys [*sic*] fees, arising from this transaction."

15.     At no time did Gordon and/or Balikian afford Roberts an opportunity to consult with counsel before signing the February 20, 2004 letter (since the letter was first presented to Roberts at the closing), and at no time did Gordon and/or Balikian recommend that Roberts seek counsel before signing the document. Roberts, without the benefit of counsel, executed the letter during the course of the closing.

16.     At or around the time of the closing, Tarek executed a Quitclaim Deed (the "Quitclaim Deed") conveying the Condominium Unit to Roberts, and Gordon and/or Balikian notarized Tarek's signature. (See a true and accurate copy of the Quitclaim Deed at **Exhibit F**). In the Quitclaim Deed, the "full consideration" was recited as $243,000, not approximately $421,000. Having already paid an initial deposit of $11,000, Roberts paid the balance of approximately $232,000 in cash at the closing. Nothing in the Quitclaim Deed identifies the Mortgage, or lists the bank involved. Nothing in the Quitclaim Deed states that Roberts would assume any mortgage on the Condominium Unit as a part of the conveyance.

3

17.     At no time did Roberts execute any documents for Tarek's Mortgagee, or for any other entity or individual, in which he agreed to assume responsibility for the Mortgage.

18.     Moreover, Tarek conveyed the property to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek covenanted that at the time of delivery of the deed, the Condominium Unit was free from all encumbrances made by Tarek and Tarek warranted and agreed to defend the Condominium Unit against lawful claims and demands claiming by, through or under Tarek. In other words, by conveying the Condominium Unit pursuant to a Quitclaim Deed, Tarek warranted to Roberts that the Condominium Unit was free and clear. That was not the case.

19.     At no time following the closing did Tarek or Gordon or Balikian take any steps to discharge and/or to pay off the Mortgage. As a result, Tarek received not only the $243,000 in cash provided by Roberts, he also wrongfully walked away from an obligation to pay a Mortgage in the amount of approximately $178,000.

20.     The U.S. Department of Housing and Urban Development Settlement Statement (the "HUD-1") reveals that Gordon and Balikian served as the settlement agent with regard to the conveyance of the Property. (See a true and accurate coy of the HUD-1 at **Exhibit G**, which copy is not executed by Tarek's Counsel). The settlement agent is charged with the responsibility of making the necessary disbursements from the proceeds of the closing. In that role, the settlement agent routinely inquires about whether there is a mortgage payoff so as to be prepared to make any necessary payments. In Lines 203 and 503 of the HUD-1, the settlement agent identifies any existing loans that the property was taken "subject to." Here, those spaces are left blank on the HUD-1, thus demonstrating (1) that Roberts was not assuming any mortgage and (2), erroneously, that there was no outstanding mortgage at the time of the closing. Nothing on the HUD-1 gave Roberts any notice whatsoever that there was a mortgage remaining on the property.

21.     After purchasing the Condominium Unit, Roberts paid thousands of dollars in condominium fees, and he invested tens of thousands of dollars in renovations to the Condominium Unit over the next several years.

22.     On September 24, 2007, more than three years after Roberts purchased the Condominium Unit, Tarek's Mortgagee assigned the Mortgage to Deutsche Bank National Trust Co. ("Deutsche Bank"). (See a true and accurate copy of Assignment at **Exhibit H**).

23.     Shortly thereafter, unbeknownst to Roberts, Deutsche Bank initiated foreclosure proceedings pertaining to the Condominium Unit. On or about March 11, 2008, unbeknownst to Roberts, the Land Court (Sheier, J.) entered a judgment in a Complaint to Foreclose Mortgage (Docket No. 07 MISC 361107) permitting Deutsche Bank to enter and to sell the Condominium Unit in accordance with the powers set forth in the Mortgage. (See a true and accurate copy of the Land Court judgment **Exhibit I**).

4

24.     On or about March 13, 2008, unbeknownst to Roberts, Deutsche Bank conducted a foreclosure sale on the Condominium Unit (the "Foreclosure Sale"). In a Certificate of Entry dated March 13, 2008, unbeknownst to Roberts, Deutsche Bank gave notice that it had made entry on the Condominium Unit for the purposes of foreclosing the Mortgage. (See true and accurate copy of Certificate of Entry at **Exhibit J**). In the Certificate of Entry, Deutsche Bank expressly mentions Tarek, but nowhere in the document does Deutsche Bank refer to Roberts, further demonstrating that the Mortgage remained Tarek's obligation.

25.     On May 13, 2008, unbeknownst to Roberts, a Foreclosure Deed was recorded in the Suffolk County Registry of Deeds (Book 43527, Page 1) in which Deutsche Bank claimed to have acquired the Condominium Unit under the terms of the Mortgage for the sum of $199,393.27. (See a true and accurate copy of the Foreclosure Deed at **Exhibit K**). At no time has Roberts received any funds representing any surplus from the Foreclosure Sale.

26.     Roberts had rented the Condominium Unit to two lessees, beginning in or about August or September 2006. In or about May 2008, Roberts received a telephone call from one of his tenants, Vignoble Sylvestre, where Sylvestre informed Roberts that Sylvestre had received a certified letter from a bank stating that the bank now owned the Condominium Unit and ordering the lessees to vacate the Condominium Unit. At the time, Roberts had no knowledge whatsoever of the existence of any mortgage on the property. Roberts performed some internet research and located an address in Jamaica Plain for 10 Jamaica Plain Court. Roberts told Sylvestre, in words or substance, not to worry about the letter, because the letter must relate to the 10 Jamaica Plain Court property, and not to the Condominium Unit. That communication from Sylvestre represented the first notice that Roberts had, from any source, that anyone claimed, rightfully or wrongfully, that there was a mortgage of any kind on the Condominium Unit.

### Count I
### Breach of Contract Against Tarek

27.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 26 above, as if restated in their entirety here.

28.     The P&S Agreement was a binding contract, and pursuant to it, Tarek was obligated to convey the Condominium Unit free and clear of all encumbrances.

29.     Roberts fully performed under the P&S Agreement.

30.     Tarek breached the P&S Agreement by failing to convey the Condominium Unit free and clear of all encumbrances and by breaching the covenant of good faith and fair dealing.

31.    As a result of Tarek's breach of the P&S Agreement, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count II
## Intentional Misrepresentation Against Tarek

32.    Roberts repeats and realleges the allegations contained in paragraphs 1 through 31 above, as if restated in their entirety here.

33.    Tarek and his agents intentionally made material misrepresentations regarding the Condominium Unit and the Mortgage intending that Roberts rely upon those material misrepresentations. Tarek and his agents intentionally misrepresented that the Condominium Unit was unencumbered or that if it was encumbered that it would be conveyed to Roberts free and clear of all encumbrances.

34.    Roberts reasonably relied to his detriment upon the material misrepresentations made by Tarek and his agents regarding the Condominium Unit and the Mortgage.

35.    As a result of Tarek's intentional misrepresentations, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count III
## Negligent Misrepresentation Against Tarek

36.    Roberts repeats and realleges the allegations contained in paragraphs 1 through 35 above, as if restated in their entirety here.

37.    Tarek owed a duty to Roberts as the seller of the Condominium Unit.

38.    Tarek and his agents breached that duty by negligently making material misrepresentations regarding the Condominium Unit and the Mortgage intending that Roberts rely upon those material misrepresentations. Tarek and his agents negligently misrepresented that the Condominium Unit was unencumbered or that if it was encumbered that it would be conveyed to Roberts free and clear of all encumbrances.

39.    Roberts reasonably relied to his detriment upon the material misrepresentations made by Tarek and his agents regarding the Condominium Unit and the Mortgage.

6

40. As a result of Tarek's negligent misrepresentations, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

### Count IV
### Violation of Mass. Gen. Laws Ch. 183, Sections 11 and 17 Against Tarek

41. Roberts repeats and realleges the allegations contained in paragraphs 1 through 40 above, as if restated in their entirety here.

42. Tarek conveyed the Condominium Unit to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek covenanted that at the time of delivery of the deed, the Condominium Unit was free from all encumbrances made by Tarek.

43. Tarek conveyed the property to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek warranted and agreed to defend the Condominium Unit against lawful claims and demands claiming by, through or under Tarek.

44. Tarek conveyed the property to Roberts pursuant to a Quitclaim Deed, and in doing so Tarek warranted to Roberts that the Condominium Unit was free and clear.

45. Roberts reasonably relied upon the warranties made to him by Tarek in the Quitclaim Deed.

46. The Condominium Unit was not free and clear but rather was encumbered by the Mortgage. Thus, Tarek breached the warranties provided in the Quitclaim Deed, and Roberts has been damaged as a result.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

### Count V
### Intentional Misrepresentation Against Gordon

47. Roberts repeats and realleges the allegations contained in paragraphs 1 through 46 above, as if restated in their entirety here.

48. Gordon intentionally made material misrepresentations regarding the Condominium Unit and the Mortgage (including but not limited to in the HUD-1) intending that Roberts rely upon those material misrepresentations. Via at least the HUD-1, Gordon intentionally misrepresented that the Condominium Unit was unencumbered or that if it was encumbered that it would be conveyed to Roberts free and clear of all encumbrances.

7

49.     Roberts reasonably relied to his detriment upon the material misrepresentations made by Gordon regarding the Condominium Unit and the Mortgage.

50.     As a result of Gordon's intentional misrepresentations, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count VI
### Negligent Misrepresentation Against Gordon

51.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 50 above, as if restated in their entirety here.

52.     As the settlement agent, Gordon owed a duty to Roberts.

53.     Gordon breached that duty by negligently making material misrepresentations regarding the Condominium Unit and the Mortgage (including but not limited to in the HUD-1) intending that Roberts rely upon those material misrepresentations. Via at least the HUD-1, Gordon negligently misrepresented that the Condominium Unit was unencumbered or that if it was encumbered that it would be conveyed to Roberts free and clear of all encumbrances.

54.     Roberts reasonably relied to his detriment upon the material misrepresentations made by Gordon (via at least the HUD-1) regarding the Condominium Unit and the Mortgage.

55.     As a result of Gordon's negligent misrepresentations, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count VII
### Violation of Massachusetts General Laws Chapter 93A Against Gordon

56.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 55 above, as if restated in their entirety here.

57.     As a practicing lawyer, Gordon is engaged in trade or commerce in Massachusetts.

58.     Gordon acted unfairly and deceptively by, among other things, intentionally making material misrepresentations regarding the Condominium Unit and

8

the Mortgage (including but not limited to in the HUD-1) intending that Roberts rely upon those material misrepresentations.

59.    On or about April 16, 2009, Roberts sent a demand letter to Gordon pursuant to Chapter 93A, demanding that Gordon provide a reasonable settlement offer. Gordon refused to provide one.

60.    As a result of Gordon's actions, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, trebled, plus interest, costs and attorneys fees.

## Count V
### Intentional Misrepresentation Against Balikian

61.    Roberts repeats and realleges the allegations contained in paragraphs 1 through 60 above, as if restated in their entirety here.

62.    Balikian intentionally made material misrepresentations regarding the Condominium Unit and the Mortgage (including but not limited to in the HUD-1) intending that Roberts rely upon those material misrepresentations. Via at least the HUD-1, Balikian intentionally misrepresented that the Condominium Unit was unencumbered or that if it was encumbered that it would be conveyed to Roberts free and clear of all encumbrances.

63.    Roberts reasonably relied to his detriment upon the material misrepresentations made by Balikian regarding the Condominium Unit and the Mortgage.

64.    As a result of Balikian's intentional misrepresentations, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

## Count VI
### Negligent Misrepresentation Against Balikian

65.    Roberts repeats and realleges the allegations contained in paragraphs 1 through 64 above, as if restated in their entirety here.

66.    As the settlement agent, Balikian owed a duty to Roberts.

67.    Balikian breached that duty by negligently making material misrepresentations regarding the Condominium Unit and the Mortgage (including but not limited to in the HUD-1) intending that Roberts rely upon those material

misrepresentations. Via at least the HUD-1, Balikian negligently misrepresented that the Condominium Unit was unencumbered or that if it was encumbered that it would be conveyed to Roberts free and clear of all encumbrances.

68.     Roberts reasonably relied to his detriment upon the material misrepresentations made by Balikian (via at least the HUD-1) regarding the Condominium Unit and the Mortgage.

69.     As a result of Balikian's negligent misrepresentations, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, plus interest, costs and attorneys fees.

### Count VII
### Violation of Massachusetts General Laws Chapter 93A Against Balikian

70.     Roberts repeats and realleges the allegations contained in paragraphs 1 through 69 above, as if restated in their entirety here.

71.     As a practicing lawyer, Balikian is engaged in trade or commerce in Massachusetts.

72.     Balikian acted unfairly and deceptively by, among other things, intentionally making material misrepresentations regarding the Condominium Unit and the Mortgage (including but not limited to in the HUD-1) intending that Roberts rely upon those material misrepresentations.

73.     On or about April 16, 2009, Roberts sent a demand letter to Balikian pursuant to Chapter 93A, demanding that Balikian provide a reasonable settlement offer. Balikian refused to provide one.

74.     As a result of Balikian's actions, Roberts has been damaged.

**Wherefore,** Roberts respectfully requests that judgment enter in his favor on this count in an amount to be determined at trial, trebled, plus interest, costs and attorneys fees.

10

**Jury Demand**

Plaintiff, Thomas Roberts, respectfully requests a jury trial on all issues so triable.

Respectfully submitted,
THOMAS ROBERTS
By his attorneys,


David P. Russman (BBO 567796)
The Russman Law Firm, P.C.
33 Bellevue Street, Suite One
Boston, MA  02125
T. 617.282.5300
F. 617.282.5301
drussman@russmanlawfirm.com

Dated: December 29, 2010

11

# EXHIBIT "C"

## SETTLEMENT, MUTUAL RELEASE AND CONFIDENTIALITY AGREEMENT

In exchange for ONE THOUSAND DOLLARS ($1,000.00), of which $500.00 is paid by Ara J. Balikian, Esq. and $500.00 is paid by Philip Gordon, Esq., Thomas Roberts, Jr., on behalf of himself, his successors, heirs, administrators and assigns, and each past or present agent or representative (hereinafter the "RELEASOR"), hereby remises, releases and forever discharges Ara J. Balikian, Esq. and Philip Gordon, Esq., and each and every one of their respective successors, heirs, administrators and assigns, and each past or present agent or representative, and Gordon & Balikian, LLP, Balikian Law and Gordon Law Group LLP and each and every one of their respective partners, employees, consultants, insurers, agents, representatives, attorneys and affiliates (hereinafter "RELEASEES") of and from any and all claims, demands, causes of actions, obligations, liabilities, and damages of any kind, name, nature, description, known and unknown, which have or which could have been alleged, either at law or in equity, which RELEASOR has ever had, from the beginning of the world up to the date of signing this Settlement, Mutual Release and Confidentiality Agreement, including without limitation, (1) all claims arising out of Thomas Roberts, Jr.'s purchase of real estate located at 10 Jamaica Way, Unit 11, Jamaica Plain, MA ("the real estate") on or about February 24, 2004; (2) all claims arising out of Deutsche Bank National Trust Co.'s foreclosure sale on the real estate on or about March 13, 2008; and (3) all claims which were asserted or could have been asserted by Thomas Roberts, Jr. against either or both, Ara J. Balikian, Esq., and Philip Gordon, Esq., in the matter captioned *Thomas Roberts v. Abu Tarek, Philip Gordon, Esq., and Ara Balikian, Esq.*, Suffolk Superior Court Civil Action No. 09-04562.

Ara J. Balikian, Esq. and Philip Gordon, Esq., and each and every one of their respective successors, heirs, administrators and assigns, and each past or present agent or representative, and Gordon & Balikian, LLP, Balikian Law and Gordon Law Group LLP and each and every one of their respective partners, employees, consultants, insurers, agents, representatives,

attorneys and affiliates hereby remise, release and forever discharge Thomas Roberts, Jr. and each and every one of his successors, heirs, administrators and assigns, and each past or present agent or representative of and from any and all claims, demands, causes of actions, obligations, liabilities, and damages of any kind, name, nature, description, known and unknown, which could have been alleged, either at law or in equity, which Ara J. Balikian, Esq. and Philip Gordon, Esq., have ever had, from the beginning of the world up to the date of signing this Settlement, Mutual Release and Confidentiality Agreement, including (1) all claims arising out of Thomas Roberts, Jr.'s purchase of real estate located at 10 Jamaica Way, Unit 11, Jamaica Plain, MA ("the real estate") on or about February 24, 2004; (2) all claims arising out of Deutsche Bank National Trust Co.'s foreclosure sale on the real estate on or about March 13, 2008; and (3) all claims which were asserted or could have been asserted by Thomas Roberts, Jr. against Ara J. Balikian, Esq., and Philip Gordon, Esq., in the matter captioned *Thomas Roberts v. Abu Tarek, Philip Gordon, Esq., and Ara Balikian, Esq.*, Suffolk Superior Court Civil Action No. 09-04562.

Simultaneously with the execution of this Mutual Release, Settlement Agreement and Confidentiality Agreement, Thomas Roberts, Jr. shall deliver to counsel for Ara J. Balikian, an executed Notice of Dismissal With Prejudice, without costs or attorneys' fees and waiving all rights of appeal pursuant to Mass. R. Civ. P. Rule 41(a)(1), to be held in escrow by counsel for Ara J. Balikian, to be released from escrow and filed with the Court by counsel for Ara J. Balikian, simultaneously with the delivery by counsel for Ara J. Balikian, of the $1,000 (One Thousand Dollars) settlement payment to Thomas Roberts, Jr.

The RELEASOR agrees that payment of the sum referred to above is solely in settlement of a highly disputed claim, which the RELEASEES deny and should not be construed in any way as an admission of liability or an admission that any of the facts asserted by RELEASOR are

true, or that the claim or any portion thereof asserted by RELEASOR is well founded; said sum is provided solely in settlement to avoid the expense of further litigation.

The RELEASOR agrees that he shall treat as confidential the negotiation, resolution and settlement of *Thomas Roberts v. Abu Tarek, Philip Gordon, Esq., and Ara Balikian, Esq.*, Suffolk Superior Court Civil Action No. 09-04562, including this Settlement, Mutual Release and Confidentiality Agreement, and shall not publish, disclose or reveal such matters to any third party; provided that, if RELEASOR is compelled to disclose this Settlement, Mutual Release and Confidentiality Agreement, he shall obtain the written consent of Balikian and/or Gordon, except that if RELEASOR is compelled to disclose this Settlement, Mutual Release and Confidentiality Agreement by Court order or in connection with any state or federal reporting requirements, he shall notify Gordon and/or Balikian in writing at least fifteen days prior to such disclosure; provided further, that in the event RELEASOR is asked directly about *Thomas Roberts v. Abu Tarek, Philip Gordon, Esq., and Ara Balikian, Esq.*, Suffolk Superior Court Civil Action No. 09-04562, he may respond solely that, "The matter has been dismissed."

RELEASOR represents and warrants that he has filed no other complaints, claims, demands or actions with any court, administrative body, board of registration or agency, at any time, against any RELEASEE, other than *Thomas Roberts v. Abu Tarek, Philip Gordon, Esq., and Ara Balikian, Esq.*, Suffolk Superior Court Civil Action No. 09-04562. RELEASOR represents and acknowledges that he was never a client of any RELEASEE, as such term is understood in the Massachusetts Rules of Professional Conduct.

This Release contains the entire agreement between and among the RELEASOR and RELEASEES and its terms are contractual and not merely a recital. It is expressly understood and agreed that there has been no promise or representation except as expressly provided herein.

The RELEASOR and RELEASEES expressly understand and agree that this is a full and final release of all claims against each other.

The RELEASOR and RELEASEES intend that the invalidity or unenforceability of any provision of this Release and Settlement Agreement shall not affect or render invalid or unenforceable any other provision.

The RELEASOR and RELEASEES represent and warrant that they are represented by counsel, and have had the full opportunity to seek the advice of their own counsel prior to signing this Settlement, Mutual Release and Confidentiality Agreement, and that they have been encouraged to do so.

Executed as an instrument under seal this ___ day of April 2012.

_____
Thomas Roberts, Jr.

_____
Ara J. Balikian, Esq.

_____
Philip Gordon, Esq.

# EXHIBIT "D"

**Commonwealth of Massachusetts**
County of Suffolk
The Superior Court

**32**

CIVIL DOCKET# **SUCV2009-04562**

Thomas Roberts
Vs.
Abu Tarek,
Deutsche Bank National Trust Co,
Phillip Gordon, Esq (as amended),
Ara Balikian, Esq. (as amended)

## FINAL JUDGMENT
### (pursuant to Mass.R.Civ.P. 54(b))

This action came on before the Court, Janet L. Sanders, J., presiding, and upon Defendants Phillip Gordon, Esq (as amended) and Ara Balikian, Esq.'s (as amended) Motion for entry of separate and final Judgment pursuant to Mass. R. Civ. P. 54(b) and the Court having found and determined that **there is no just reason for delay in the entry of final Judgment** and therefore allowed said motion, and upon consideration thereof,

It is **ORDERED and ADJUDGED**:

That the Complaint of the Plaintiff, Thomas Roberts be and hereby is **DISMISSED** against the Defendants, Phillip Gordon, Esq (as amended), and Ara Balikian, Esq. (as amended), with costs.

Dated at Boston, Massachusetts this 26th day of July, 2012.

Notice
Sent
7 27 12
DPR
MDA+C

DB
AKM
H+C
JMF
DMS
DS+U
PP

Michael Joseph Donovan,
Clerk of the Courts

By:.......................................................
Assistant Clerk

cvdjudg54tbldef_1.wpd 41n4260 mot jud54 quinnela

JUDGMENT ENTERED ON DOCKET __7  27__ 20 _12_
PURSUANT TO THE PROVISIONS OF MASS. R. CIV. P. 58(a)
AND NOTICE SENT TO PARTIES PURSUANT TO THE PRO
VISIONS OF MASS. R. CIV. P. 77(d) AS FOLLOWS  7/27/12

# EXHIBIT "E"

**STANDARD FORM**
**PURCHASE AND SALE AGREEMENT**

This _18_ day of February, 2004

1. **PARTIES AND MAILING ADDRESSES**

   (fill in)

   Abu Tarek of 4 Commonwealth ~~of Massachusetts~~, Apt. 15, Boston, Massachusetts 02116, hereinafter called the **SELLER**, agrees to SELL and Thomas Roberts of _P.O. Box 230777 Boston_, Massachusetts _02123_, hereinafter called the **BUYER or PURCHASER**, agrees to BUY, upon the terms hereinafter set forth, the following described premises:
   10 Jamaicaway, Unit #11, Jamaica Plain, Suffolk County, Massachusetts 02130.

2. **DESCRIPTION**
   (fill in and include title reference)

   Unit No. 11 ("the Unit") of The 10 Jamaicaway Condominium, Massachusetts (the "Condominium"), created pursuant to Chapter 183A of the Massachusetts General Laws by Master Deed dated June 6, 1984, and recorded with Suffolk County Registry of Deeds at Book 10962, Page 001, together with (a) an undivided 3.7% interest in both common areas and facilities of the Condominium and the organization of unit owners through which the condominium is managed and regulated, (b) exclusive right to use the parking spaces and storage room, if any, assigned to the Unit, and (c) such other rights and easements appurtenant to the Unit as may be set forth in any documents governing the operation of the condominium, including without limitation the Master Deed, the By-Laws of the organization of unit owners, and any administrative rules and regulations adopted pursuant thereto (all of which are hereinafter referred to as the Condominium Documents). The above-described premises are those conveyed to the SELLER by deed, recorded with Suffolk Registry of Deed in Book 32905, Page 146.

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**
   (fill in or delete)

   Included in the sale, as part of the Unit, are the fixtures belonging to the SELLER, and used in connection therewith, and _All Appliances and fixtures to stay_
   but excluding _nothing is excluded_
   to the extent to which any of such fixtures belong to the SELLER may be governed in part by the provisions contained in the Condominium Documents.

4. **TITLE DEED**
   (fill in)
   *Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER'S breach of SELLER'S covenants in leases, where necessary.

   Said Unit is to be conveyed by a good and sufficient quitclaim deed running to BUYER, or to the nominee designated by BUYER by written notice to SELLER at least seven (7) days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except
   (a)   Provisions of existing building and zoning laws;
   (b)   Existing rights and obligations in party walls which are not the subject of written agreement;
   (c)   Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
   (d)   Any liens for municipal betterments assessed after the date of this agreement;
   (e)   Easements, restrictions and reservations of record, if any, as of the date of this Agreement, so long as the same do not, or could not be exercised in such a way so as to prohibit or materially interfere with BUYER'S reasonable opinion with the current use of said premises as a single family residence;
   (f)   The provisions of the Act (Chapter 183A of the Massachusetts General Laws) and the Condominium documents (any document governing the operation of the Condominium, including without limitation the Master Deed, the By-Laws of the organization of unit owners and any administrative rules and regulations adopted pursuant thereto, as amended, in effect now or at the date of the closing) including without limitation all obligations of the unit owners to pay a proportionate share of the common expenses of the Condominium.

5. **PLANS**

   If said deed refers to a plan necessary to be recorded therewith SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **REGISTERED TITLE**

   In addition to the foregoing, if the title to said Unit is registered, said deed shall be in form sufficient to entitle BUYER to a Certificate of Title of said Unit, and SELLER shall deliver with said deed all instruments, if any, necessary to enable BUYER to obtain such Certificate of Title.

7. **PURCHASE PRICE**
   (fill in); space is allowed to write out the amounts if desired)

   The agreed purchase price for said Unit is Two Hundred Forty Three _Thousand_ Dollars and 00/100 Cents ($243,000.00), of which

   | | | |
   |---|---|---|
   | $ | 0.00 | have been paid as a deposit this day and |
   | $ | 11,000.00 | having been previously paid and |
   | $ | 232,000.00 | are to be paid at the time of delivery of the deed in cash, or by certified, cashier's, treasurer's or bank check(s), or by conveyancer's check from BUYER's lender's attorney if drawn on a Massachusetts bank. |
   | $ | 243,000.00 | **TOTAL** |

| 8. | TIME FOR PERFORMANCE; DELIVERY OF DEED (fill in) | Such deed is to be delivered at 11:00 a.m. on the 20th day of February at the Suffolk County Registry of Deeds or, if required by BUYER's lender, then at the offices of BUYER's lender's counsel, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this agreement. |
|---|---|---|
| 9. | POSSESSION AND CONDITION OF PREMISE. (attach a list of exceptions, if any) | Full possession of said Unit free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said Unit to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof; and (d) broom clean and free of debris and personal property.  BUYER shall be entitled personally to enter and inspect said Unit prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause. |
| 10. | EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM (Change period of time if desired). | If SELLER shall be unable to give title or to make conveyance, or to deliver possession of the Unit, all as herein stipulated, or if at the time of the delivery of the deed the Unit do not conform with the provisions hereof, then ~~any payments made under this agreement shall forthwith be refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto unless~~ SELLER elects to shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said Unit conform to the provisions hereof, as the case may be, in which event SELLER shall give written notice thereof to BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days.  In no event shall SELLER be required to expend more than a total of $1,000.00 to clear title and deliver possession. |
| 11. | FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc. | If at the expiration of the extended time SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. |
| 12. | BUYER'S ELECTION TO ACCEPT TITLE | BUYER shall have the election, at either the original or any extended time for performance, to accept such title as SELLER can deliver to the said Unit in its then condition and to pay therefor the purchase price without deduction, in which case SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said Unit shall have been damaged by fire or casualty insured against, then SELLER shall, unless SELLER has previously restored the Unit to its former condition, either |
| | | (a) pay over or assign to BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by SELLER for any partial restoration, plus any deductible; or |
| | | (b) if a holder of a mortgage on said Unit shall not permit the insurance proceeds or a part thereof to be used to restore the said Unit to its former condition or to be so paid over or assigned, give to BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered, recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by SELLER for any partial restoration, plus any deductible. |
| 13. | ACCEPTANCE OF DEED | The acceptance of a deed by BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. |
| 14. | USE OF MONEY TO CLEAR TITLE | To enable SELLER to make conveyance as herein provided, SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed or provided discharges of mortgages, if any, from banks or other lending institutions are recorded within a reasonable time following delivery of the deed. |

| 15. | INSURANCE *Insert amount (list additional types of insurance and amounts as agreed) | Until the delivery of the deed, SELLER shall maintain insurance on said Unit as follows: |  |
|---|---|---|---|
| | | *Type of Insurance* | *Amount of Coverage* |
| | | (a) Fire and Extended Coverage | *$ As presently insured |
| | | (b) | *$ |

| 16. | ADJUSTMENTS (list operating expenses, if any, or attach schedule) | Collected rents, mortgage interest, water and sewer use charges, operating expenses (if any) according to the schedule attached hereto or set forth below, and taxes for the then current fiscal year, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by BUYER at the time of delivery of the deed.  Uncollected rents for the current rental period shall be apportioned if and when collected by either party. |
|---|---|---|

| 17. | ADJUSTMENT OF UNASSESSED AND ABATED TAXES | If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. |
|---|---|---|
| 18. | BROKER'S FEE (fill in fee with dollar amount or percentage; also name of Brokerage firm (s)) | A Broker's fee for professional services of five percent (5%) of the purchase price ($_12,150.00_) is due from SELLER to Prudential Unlimited, the Broker herein, if and when the deed for the Property is recorded and proceeds distributed. |
| 19. | BROKER(S) WARRANTY (fill in name) | The Broker named herein warrants that the Broker is duly licensed as such by the Commonwealth of Massachusetts. |
| 20. | DEPOSIT (fill in name) | All deposits made hereunder shall be held in escrow in a non-interest-bearing account by Prudential Unlimited, as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent shall retain all deposits made under this agreement pending instructions mutually given by SELLER and BUYER. In the event SELLER and BUYER cannot reach a mutually satisfactory resolution to any such disagreement, SELLER and BUYER shall seek a resolution in an arbitration conducted by an arbitrator duly licensed in Massachusetts. The final descison of such arbitrator shall be legally binding on both SELLER and BUYER and the costs of such arbitration shall be borne equally by the parties. |
| 21. | BUYER'S DEFAULT; DAMAGES | If BUYER shall fail to fulfill BUYER's agreements herein, all deposits made hereunder by BUYER shall be retained by SELLER as liquidated damages unless within thirty days after the time for performance of this agreement or any extension hereof, SELLER otherwise notifies BUYER in writing. |
| 22. | RELEASE BY HUSBAND OR WIFE | SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said Unit. |
| 23. | BROKER AS PARTY | The Broker(s) named herein join(s) in this Agreement and become(s) a party hereto, insofar as any provisions of this Agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing. |
| 24. | LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If SELLER or BUYER executes this Agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, neither SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |
| 25. | WARRANTIES AND REPRESENTATIONS (fill in); if none, state "none"; if any listed, indicate by whom each warranty or representation was made | BUYER acknowledges that BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either SELLER or the Broker(s):<br><br>NONE |
| 26. | MORTGAGE CONTINGENCY CLAUSE (omit if not provided for in Offer to Purchase) | ~~In order to help finance the acquisition of said Unit, BUYER shall apply for a conventional bank or other institutional mortgage loan of $_____ at prevailing rates, terms and conditions. If despite BUYER's diligent efforts a commitment for such loan cannot be obtained on or before _____, 2004 , BUYER may terminate this agreement by written notice to SELLER and/or the Broker(s), as agent(s) for the SELLER, prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto. In no event will BUYER be deemed to have used diligent efforts to obtain such commitment unless BUYER submits a complete mortgage loan application conforming to the foregoing provisions on or before _____, 2004.~~<br><br>NOT APPLICABLE. |

27. CONSTRUCTION OF AGREEMENT

This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both SELLER and BUYER. If two or more persons are named herein as BUYER or as SELLER, their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28. LEAD PAINT LAW

The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29. SMOKE DETECTORS

SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said Unit is located stating that said Unit has been equipped with approved smoke detectors in conformity with applicable law.

30. ADDITIONAL PROVISIONS

See Rider A attached hereto and made a part hereof.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED
LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations.   If not understood, consult an attorney.

SELLER: ABU TAREK
Social Security No. _____

SELLER:
Social Security No. 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

BUYER: THOMAS ROBERTS
Social Security No. 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

BUYER: Thomas Roberts
Social Security No. 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

EXTENSION OF TIME FOR PERFORMANCE

The time for the performance of the foregoing agreement is extended until __Four__ o'clock __P.__M. on the   Date 2/18/04
__20th__ day of __February__, 20 04, time still being of the essence of this agreement as extended. In all other respects, this agreement is hereby ratified and confirmed.

This extension, executed in multiple counterparts, is intended to take effect as a sealed instrument.

SELLER (or spouse)

BUYER

SELLER

BUYER

Broker(s)

Note:  This Document is an adaptation of The Greater Boston Real Estate Board Standard Form Purchase and Sale Agreement

RIDER A
TO PURCHASE AND SALE AGREEMENT

SELLER:     Abu Tarek
BUYER:      Thomas Roberts
PROPERTY:   Unit 11, The 10 Jamaicaway Condominium, Jamaica Plain, Massachusetts

31. **No Broker:** The BUYER and SELLER each represent and warrant to the other that they have not dealt with any brokers or finders in connection with the purchase and sale of the Unit as provided in this Agreement or in connection with this Agreement other than Prudential Unlimited BUYER and SELLER each agrees to exonerate, indemnify and hold the other harmless from and against any and all loss, cost, damage or expense, including reasonable attorneys' fees incurred by the other as a result of either BUYER's or SELLER's misrepresentation or breach of the foregoing warranty. The provisions of this clause shall survive the closing.

and shall be deemed delivered upon the earliest to occur of (a) receipt or refusal to accept delivery; or (b) upon delivery prior to 5:00 p.m. on any business day by telecopy evidenced by written or printed receipt confirmation, provided a copy of any such notice sent by telecopy is sent also by means of one of the above-described manners of delivery. BUYER and SELLER may change the address to which any notice is to be sent by giving reasonable notice to the other party of such new address in the manner specified.

34.  **BUYER's Inspection:** BUYER acknowledges that BUYER elected not to perform an inspection, or have an inspection performed, by an engineer, contractor or other person(s) engaged in the home inspection business and agrees that BUYER is purchasing the Unit in its present "AS IS" condition.

35.  **Title:** BUYER agrees that at the request of BUYER, no review of title of the Unit or Condominium was performed and that BUYER is purchasing from SELLER whatever rights, title and interests SELLER may have in and to the Unit. BUYER further agrees that BUYER's obligations hereunder are expressly NOT conditioned upon title to the Unit being insurable with a national recognized title insurance company.

36.  **No Representations to Buyer:** BUYER warrants and agrees that neither SELLER nor SELLER's attorneys have made any representation whatsoever regarding the title to the Unit or the property, the payment of any Condominium fees, taxes, charges or assessments related to the Unit or property or the conditions of the Unit or property, and that BUYER is not relying upon any such representations in BUYER's purchase of the Unit.

39.  **Merger.** It is understood and agreed that (i) all contemporaneous or prior representations, statements, understandings and agreements, oral or written, between the parties are merged in this Agreement, which alone fully and completely expresses the agreement of the parties, and (ii) that this Agreement is entered into after full investigation, neither party relying on any statement or representation made by the other which is not embodied in the Agreement.

SELLER: Abu Tarek                              BUYER: Thomas Roberts

# EXHIBIT "F"

Total Pages: 3

Return Address:
Thomas Roberts
10 Jamaicaway, #11
Jamaica Plain, MA  02130

**273**

# QUITCLAIM DEED

ABU TAREK,

*Unit 11 of The 10 Jamaicaway Condominium, Jamaica Plain, Massachusetts*

of 4 Commonwealth Court, #15, Boston, Suffolk County, Massachusetts,

for consideration paid, and in full consideration of Two Hundred Forty Three Thousand Dollars ($243,000.00) and other good and valuable consideration,

grant to **THOMAS ROBERTS**,

of 144 Smith Street, Boston, Suffolk County, Massachusetts with

*QUITCLAIM COVENANTS*,

Unit No. 11 (the "Unit") in The 10 Jamaicaway Condominium (the "Condominium"), a condominium established pursuant to Massachusetts General Laws, Chapter 183A by Master Deed, dated June 7, 1984 and recorded at the Suffolk County Registry of Deeds in Book 10962, Page 001 (the "Master Deed"). The post office address of the Unit is 10 Jamaicaway, Boston, Massachusetts. The Unit is shown on the floor plans (the "Plans") filed simultaneously with the Master Deed with said Deeds to which is affixed the verified statement required by Section 9 of said Chapter 183A.

The Unit is conveyed together with:

1. An undivided 3.7 percent interest in the common areas and facilities (the "Common Elements") described in the Master Deed in Schedule B thereto.

2. The rights and obligations of membership in The 10 Jamaicaway Condominium Association (the "Condominium Association").

3. The right to use any common laundry facilities in accordance with the Master Deed.

4. An easement for the continuance of all encroachments by the Unit on any adjoining units or Common Elements existing as a result of construction of the building in which the Unit is located or which may come into existence hereafter as a result of settling or shifting of said building or as a result of repair and restoration of the building or of the Unit after damage or destruction by fire or other casualty or after a taking in condemnation or eminent domain proceedings or by reason of an alteration or repair to the Common Elements made in accordance with the Master Deed and By-laws of the Condominium Association (the "By-laws").

5. An easement in common with the owners of other units and the Condominium Association to use any pipes, wires, ducts, flues, cables, conduits, public utility lines and other Common Elements located in any of the other units elsewhere in the Condominium and serving the Unit in accordance with the Master Deed and By-laws.

# EXHIBIT "G"

# Commonwealth of Massachusetts
## SUFFOLK SUPERIOR COURT
## Case Summary
## Civil Docket

## Roberts v Tarek et al

Details for Docket: SUCV2009-04562

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2009-04562 | **Caption:** | Roberts v Tarek et al |
| **Filing Date:** | 10/26/2009 | **Case Status:** | Needs discovery |
| **Status Date:** | 03/12/2010 | **Session:** | Civil C, 3 Pemberton Sq, Boston |
| **Lead Case:** | NA | **Case Type:** | Complex |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 07/15/2012 |
| **Service Date:** | 01/24/2010 | **Disposition:** | 08/17/2011 |
| **Rule 15:** | 03/25/2010 | **Rule 12/19/20:** | 03/25/2010 |
| **Final PTC:** | 01/15/2013 | **Rule 56:** | 09/15/2012 |
| **Answer Date:** | 02/23/2010 | **Jury Trial:** | NO |

### Case Information

| | | | |
|---|---|---|---|
| **Docket Number:** | SUCV2009-04562 | **Caption:** | Roberts v Tarek et al |
| **Filing Date:** | 10/26/2009 | **Case Status:** | Needs discovery |
| **Status Date:** | 03/12/2010 | **Session:** | Civil C, 3 Pemberton Sq, Boston |
| **Lead Case:** | NA | **Case Type:** | Sale/lease real estate |

### Tracking Deadlines

| | | | |
|---|---|---|---|
| **TRK:** | F | **Discovery:** | 07/15/2012 |
| **Service Date:** | 01/24/2010 | **Disposition:** | 08/17/2011 |
| **Rule 15:** | 03/25/2010 | **Rule 12/19/20:** | 03/25/2010 |
| **Final PTC:** | 01/15/2013 | **Rule 56:** | 09/15/2012 |
| **Answer Date:** | 02/23/2010 | **Jury Trial:** | NO |

## Parties Involved

5 Parties Involved in Docket: SUCV2009-04562

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Balikian, Esq. (as amended) | **First Name:** | Ara |

| | | | |
|---|---|---|---|
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Deutsche Bank National Trust Co | **First Name:** | |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Gordon, Esq (as amended) | **First Name:** | Phillip |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Defendant |
| **Last Name:** | Tarek | **First Name:** | Abu |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

| | | | |
|---|---|---|---|
| **Party Involved:** | | **Role:** | Plaintiff |
| **Last Name:** | Roberts | **First Name:** | Thomas |
| **Address:** | | **Address:** | |
| **City:** | | **State:** | |
| **Zip Code:** | | **Zip Ext:** | |
| **Telephone:** | | | |

## Attorneys Involved

10 Attorneys Involved for Docket: SUCV2009-04562

| **Attorney Involved:** | | **Firm Name:** | HINS01 |
|---|---|---|---|
| **Last Name:** | Fabella | **First Name:** | Justin M. |
| **Address:** | 28 State Street | **Address:** | 24th Floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-213-7000 | **Tel Ext:** | |
| **Fascimile:** | 617-213-7001 | **Representing:** | Deutsche Bank National Trust Co, (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | PEAB01 |
|---|---|---|---|
| **Last Name:** | Kenney | **First Name:** | Katherine L |
| **Address:** | Federal Reserve Plaza | **Address:** | 600 Atlantic Ave |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | 617-951-2100 | **Tel Ext:** | |
| **Fascimile:** | 617-951-2125 | **Representing:** | Balikian, Esq. (as amended), Ara (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | MCEL03 |
|---|---|---|---|
| **Last Name:** | Russman | **First Name:** | David P |
| **Address:** | One Financial Center | **Address:** | 15th Floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02111 | **Zip Ext:** | |
| **Telephone:** | 617-748-5500 | **Tel Ext:** | |
| **Fascimile:** | 617-748-5555 | **Representing:** | Roberts, Thomas (Plaintiff) |

| **Attorney Involved:** | | **Firm Name:** | HINS01 |
|---|---|---|---|
| **Last Name:** | Carver | **First Name:** | Bradford R |
| **Address:** | 28 State Street | **Address:** | 24th Floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-213-7000 | **Tel Ext:** | |
| **Fascimile:** | 617-213-7001 | **Representing:** | Deutsche Bank National Trust Co, (Defendant) |

| **Attorney Involved:** | | **Firm Name:** | HINS01 |
|---|---|---|---|
| **Last Name:** | McKelvey | **First Name:** | Maura K |
| **Address:** | 28 State Street | **Address:** | 24th floor |

| | | | |
|---|---|---|---|
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-213-7000 | **Tel Ext:** | |
| **Fascimile:** | 617-213-7001 | **Representing:** | Deutsche Bank National Trust Co, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Seligson | **First Name:** | Damon M |
| **Address:** | DiNicola Seligson & Upton LLP | **Address:** | 185 Devonshire Street, Suite 902 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | 617-279-2592 | **Tel Ext:** | |
| **Fascimile:** | 617-426-0587 | **Representing:** | Gordon, Esq (as amended), Phillip (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Posner | **First Name:** | Bernard D |
| **Address:** | Law Office of Bernard D Posner | **Address:** | 47 Sedgwick Street, 2nd floor |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02130 | **Zip Ext:** | |
| **Telephone:** | 617-942-0757 | **Tel Ext:** | |
| **Fascimile:** | | **Representing:** | Deutsche Bank National Trust Co, (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | PEAB01 |
| **Last Name:** | Weiner | **First Name:** | Harvey |
| **Address:** | Federal Reserve Plaza | **Address:** | 600 Atlantic Avenue |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02210 | **Zip Ext:** | 2261 |
| **Telephone:** | 617-951-2100 | **Tel Ext:** | |
| **Fascimile:** | 617-951-2125 | **Representing:** | Balikian, Esq. (as amended), Ara (Defendant) |

| | | | |
|---|---|---|---|
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Briansky | **First Name:** | Daniel |
| **Address:** | 50 Congress Street | **Address:** | Suite 225 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02109 | **Zip Ext:** | |
| **Telephone:** | 617-742-4331 | **Tel Ext:** | |

AOTC Information Center

| | | | |
|---|---|---|---|
| **Fascimile:** | 617-367-8840 | **Representing:** | Tarek, Abu (Defendant) |
| **Attorney Involved:** | | **Firm Name:** | |
| **Last Name:** | Seligson | **First Name:** | Damon M |
| **Address:** | DiNicola Seligson & Upton LLP | **Address:** | 185 Devonshire Street, Suite 902 |
| **City:** | Boston | **State:** | MA |
| **Zip Code:** | 02110 | **Zip Ext:** | |
| **Telephone:** | 617-279-2592 | **Tel Ext:** | |
| **Fascimile:** | 617-426-0587 | **Representing:** | Gordon, Esq (as amended), Phillip (Defendant) |

## Calendar Events

5 Calendar Events for Docket: SUCV2009-04562

| No. | Event Date: | Event Time: | Calendar Event: | SES: | Event Status: |
|---|---|---|---|---|---|
| 1 | 02/18/2011 | 14:00 | Conf: final pre-trial | C | Event rescheduled by court prior to date |
| 2 | 08/31/2011 | 14:00 | Motion/Hearing: Rule12 to Dismiss | C | Event not held-req of Defendant |
| 3 | 10/20/2011 | 14:00 | Motion/Hearing: Rule12 to Dismiss | C | Event rescheduled by court prior to date |
| 4 | 11/28/2011 | 14:00 | Motion/Hearing: Rule12 to Dismiss | C | |
| 5 | 02/01/2012 | 14:00 | Motion/Hearing: Rule12 to Dismiss | C | Event rescheduled by court prior to date |

## Full Docket Entries

97 Docket Entries for Docket: SUCV2009-04562

| Entry Date: | Paper No: | Docket Entry: |
|---|---|---|
| 10/26/2009 | 1 | Complaint |
| 10/26/2009 | 2 | Civil action cover sheet filed ($500,00.00) |
| 10/27/2009 | | Origin 1, Type A08, Track F. |
| 10/27/2009 | 3 | Plaintiff Thomas Roberts's MOTION to enjoin foreclosure sale |
| 11/02/2009 | | Motion (P#3) No action will be taken on this motion until service of |
| 11/02/2009 | | process is made and returned Plff can then move for a hearing |
| 11/02/2009 | | (Lauriat,J) Notice sent 10/30/09 (entered 10/30/09) |
| 11/25/2009 | 4 | Affidavit of compliance with long-arm statute with proof of service |

| 11/25/2009 | 4 | on out of state defendant Deutsche Bank National Trust Co (cetified |
| 11/25/2009 | 4 | mail on 11/24/09) |
| 02/03/2010 | 5 | ANSWER: Deutsche Bank National Trust Co(Defendant) & jury demand (all |
| 02/03/2010 | 5 | issues) |
| 02/17/2010 | 6 | ORDER OF DISMISSAL re: Abu Tarek (w/o prejudice; service not complete |
| 02/17/2010 | 6 | by 1-88 deadline). Copies mailed. |
| 02/17/2010 |   | Case status changed to 'Needs review for answers' at service deadline |
| 02/17/2010 |   | review |
| 03/12/2010 |   | Case status changed to 'Needs discovery' at answer deadline review |
| 03/15/2010 | 7 | Plaintiff Thomas Roberts' MOTION to Vacate Order of dismissal and |
| 03/15/2010 | 7 | extend the deadline to serve the Defenadnt Abu Tarek (w/o opp) |
| 03/23/2010 |   | Motion (P#7) ALLOWED as no opposition was timely filed. Plaintiff |
| 03/23/2010 |   | shall have until 6/30/10 to serve the defenant Abu Tarek (John C. |
| 03/23/2010 |   | Cratsley, Justice) Notices mailed 3/22/2010 |
| 04/27/2010 | 8 | Defendant Deutsche Bank National Trust Co's & plff's joint MOTION to |
| 04/27/2010 | 8 | Dismiss (MRCP 12b) Complaint of Thomas Roberts |
| 04/30/2010 |   | Motion (P#8) 4/28/10 Allowed. This action is dismissed against |
| 04/30/2010 |   | Deutsche Bank only. (Peter M. Lauriat, Justice). Notices mailed |
| 04/30/2010 |   | 4/29/2010 |
| 06/21/2010 | 9 | SERVICE RETURNED: Abu Tarek(Defendant) by leaving at the last and |
| 06/21/2010 | 9 | usual place of abode at Apt 19 402 Rindge Avenue Cambridge, MA |
| 12/29/2010 | 10 | Amended complaint of Thomas Roberts & Jury demand (all issues) |
| 02/01/2011 | 11 | SERVICE RETURNED (amended complaint): Defendant Abu Tarek by leaving |
| 02/01/2011 | 11 | at the last and usual place of abode on 1/5/11 |
| 02/01/2011 | 12 | SERVICE RETURNED (amended complaint): Defendant Phillip Gordon, Esq |
| 02/01/2011 | 12 | (as amended)(Defendant) by delivering in hand to Chrissy Thomas Adm |
| 02/01/2011 | 12 | Asst on 1/10/11 |
| 02/01/2011 | 13 | SERVICE RETURNED (amended complaint): Ara Balikian, Esq. (as |
| 02/01/2011 | 13 | amended)(Defendant) by delivering in hand to Ara Balikian, Esq. o |
| 02/01/2011 | 13 | 1/5/11 |
| 02/08/2011 | 14 | Plff's assented to motion to continue pre trial conference |
| 02/23/2011 | 15 | ANSWER: Abu Tarek(Defendant) with CrossClaims |
| 03/04/2011 | 16 | Stipulation to extend time for Phillip Gordon, Esq (as amended), Ara |
| 03/04/2011 | 16 | Balikian, Esq. (as amended) to file an answer/responsive pleading to |
| 03/04/2011 | 16 | the complaint to and including 3/7/2011 |
| 03/10/2011 |   | Defendant Ara Balikian, Esq. (as amended)'s Notice of intent to file |
| 03/10/2011 |   | motion to dismiss |
| 03/31/2011 | 17 | Defendant Phillip Gordon, Esq (as amended)'s MOTION to Dismiss (MRCP |
| 03/31/2011 | 17 | 12b) amended Complaint of Thomas Roberts (w/opposition) |
| 04/06/2011 | 18 | Defendant Ara Balikian, Esq. (as amended)'s MOTION to Dismiss (MRCP |
| 04/06/2011 | 18 | 12b) amended Complaint of Thomas Roberts (w/opposition) |
| 04/13/2011 | 19 | Request of deft Ara Balikian for leave to file a reply bried Allowed |
| 04/13/2011 |   | |

|            |    |                                                                                          |
|------------|----|------------------------------------------------------------------------------------------|
|            | 19 | Reply bried limited to 5 pages ( (Sanders,J( Notice sent 4/12/11                          |
| 05/09/2011 | 20 | Defendants Ara Balikian's Reply to Plaintiffs Oppositon to Defendant                      |
| 05/09/2011 | 20 | Balikian's Motion to Dismiss                                                              |
| 08/08/2011 | 21 | Deft Philip Gordon's assented to request for continuance of hearing                       |
| 08/08/2011 | 21 | on motion to dismiss plff's amended complaint & Allowed (Gaziano,J)                       |
| 08/08/2011 | 21 | Notice sent 8/8/11                                                                        |
| 08/16/2011 | 22 | Defendant Philip Gordon's Assented to Request for Continuance of                          |
| 08/16/2011 | 22 | Hearing on Motion to Dismiss Plaintiffs Amended Complaint-ALLOWED, as                     |
| 08/16/2011 | 22 | the computer shows the new hearing date is 10/20/11 (John C Cratsley,                     |
| 08/16/2011 | 22 | Justice) notice sent 8/15/11                                                              |
| 08/26/2011 | 23 | Plaintiff Thomas Roberts's Assented to MOTION to continue October 20,                     |
| 08/26/2011 | 23 | 2011 Hearing                                                                              |
| 09/02/2011 |    | Motion (P#23) ALLOWED. The plaintiff shall contact the session clerk                      |
| 09/02/2011 |    | to reschedule (Frank M. Gaziano, Justice). Notices mailed 9/1/2011                        |
| 10/24/2011 | 24 | Plaintiff's Motiion to Dismiss Abu Tarek only without prejudice w/                        |
| 10/24/2011 | 24 | opposition                                                                                |
| 10/25/2011 | 25 | Opposition to plaintiff's Motion to Dismiss deft.Abu Tarek only                           |
| 10/25/2011 | 25 | without prejudice filed by Ara Balikian, Esq. (as amended)                                |
| 12/08/2011 |    | Motion (P#24) DENIED, alloweance of this motion could affect the                          |
| 12/08/2011 |    | interests of the other defs who indicated that they would seek to                         |
| 12/08/2011 |    | leave the automatic stay lifted if their motions to dismiss were                          |
| 12/08/2011 |    | dened. (Mitchell H. Kaplan, Justice) Dated 12/5/11 Notices mailed                         |
| 12/08/2011 |    | 12/6/2011                                                                                 |
| 12/08/2011 |    | Motion (P#18) DENIED, see written Order issued this day. (Mitchell H.                     |
| 12/08/2011 |    | Kaplan, Justice) Dated 12/5/11 Notices mailed 12/6/2011                                   |
| 12/08/2011 | 26 | ORDER ON DEFENDANTS GORDON'S AND BALIKIAN'S MOTION TO DISMISS AMENDED                     |
| 12/08/2011 | 26 | COMPLAINT: ORDER - Defendants' motions to dismiss are therefore                           |
| 12/08/2011 | 26 | DENIED. (Mitchell H. Kaplan, Justice) Dated December 5, 2011 Notice                       |
| 12/08/2011 | 26 | sent 12/6/11 (See P#26 for complete order)                                                |
| 12/13/2011 | 27 | Joint MOTION to extend the tracking order deadlines                                       |
| 12/16/2011 |    | Motion (P#27) ALLOWED, tracking order to be extended as requested.                        |
| 12/16/2011 |    | (Mitchell H. Kaplan, Justice) Dated 12/15/11 Notices mailed 12/16/2011                    |
| 01/09/2012 | 28 | ANSWER (amended complaint): Ara Balikian, Esq.                                            |
| 01/13/2012 | 29 | ANSWER: Phillip Gordon, Esq (as amended) to plff's Amended Complaint                      |
| 01/13/2012 | 29 | & Jury demand (all issues)                                                                |
| 03/30/2012 | 30 | JOINT Motion of parties to extend the tracking order deadlines                            |
| 04/06/2012 |    | Motion (P#30) ALLOWED (Edward P. Leibensperger, Justice) Dated 4/4/12                     |
| 04/06/2012 |    | Notices mailed 4/5/2012                                                                   |
| 07/19/2012 | 31 | Defendants Phillip Gordon, Esq (as amended) & Ara Balikian, Esq. (as                      |
| 07/19/2012 | 31 | amended)'s MOTION for Separate & Final Judgment (MRCP 54B) (w/o                           |
| 07/19/2012 | 31 | opposition)                                                                               |
| 07/25/2012 |    | Motion (P#31) ALLOWED there being no just reason for delay Notices                        |

| 07/25/2012 |    | mailed 7/26/2012 |
|------------|----|------------------|
| 07/27/2012 | 32 | FINAL JUDGMENT ( PURSUANT TO MASS R CIV P 54(b) That the complaint of |
| 07/27/2012 | 32 | plff is hereby Dismissed against the defts Philip Gordon Esq and Ara |
| 07/27/2012 | 32 | Balikian Esq with costs entered on docket pursuant to Mass R Civ P |
| 07/27/2012 | 32 | 58(a) and notice sent to parties pursuant to Mass R Civ P 77(d) |